UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:14-CV-163-GNS-LLK

DOLORES ALLEN                                                PLAINTIFF

v.

U.S. DEPARTMENT OF LABOR                              DEFENDANT

## **MEMORANDUM OPINION & ORDER**

Plaintiff Dolores Allen ("Allen") brings this action for review of the Department of Labor's ("DOL") denial of her claims for benefits under Parts B and E of the Energy Employees Occupational Illness Compensation Program Act of 2000 (the "EEOICPA"), 42 U.S.C. §§ 7384-7385s-16. Because the only decision for which review is available is neither arbitrary nor capricious, Allen's claim is **DENIED**.

### I.      BACKGROUND

#### A.      Statutory Background

The EEOICPA provides benefits to covered employees with illnesses caused by exposure to toxic substances in the course of their work for the Department of Energy ("DOE") and its predecessor agencies, as well as certain of its vendors, contractors, and subcontractors. An employee seeking compensation under Part B of the EEOICPA for chronic beryllium disease ("CBD") must first provide proof she qualifies as a "covered beryllium employee," i.e., that she was potentially exposed to beryllium while working at a covered DOE facility. 42 U.S.C. § 7384l(1), (7). When documentation establishes employment at a DOE facility during a period of

time when beryllium dust, particles or vapor may have been present, an employee's exposure to beryllium is presumed. *Id.* § 7384n(a). To establish a diagnosis of CBD resulting from the employee's work-related beryllium exposure, certain statutory criteria must be met depending upon whether the claimed diagnosis was prior to or on and after January 1, 1993:

> (A) For diagnoses on or after January 1, 1993, beryllium sensitivity (as established [by abnormal lymphocyte proliferation test performed on either blood or lung lavage cells]) together with lung pathology consistent with [CBD], including—
> > (i) a lung biopsy showing granulomas or a lymphocytic process consistent with [CBD]
> > (ii) a computerized axial tomography scan showing changes consistent with [CBD]; or
> > (iii) pulmonary function or exercise testing showing pulmonary deficits consistent with [CBD].
>
> (B) For diagnoses before January 1, 1993, the presence of—
> > (i) occupational or environmental history, or epidemiologic evidence of beryllium exposure; and
> > (ii) any three of the following criteria:
> > > (I) Characteristic chest radiographic (or computed tomography (CT)) abnormalities.
> > > (II) Restrictive or obstructive lung physiology testing or diffusing lung capacity defect.
> > > (III) Lung pathology consistent with [CBD].
> > > (IV) Clinical course consistent with a chronic respiratory disorder.
> > > (V) Immunologic tests showing beryllium sensitivity (skin patch test or beryllium blood test preferred).

*Id.* § 7384l(13).

Part E of the EEOICPA provides additional compensation to certain DOE contractor employees for permanent impairment and/or wage-loss due to a "covered" illness resulting from work-related exposure to toxic substances at a DOE facility. *Id.* § 7385s(2). When deciding Part E claims, DOL must find that a DOE contactor employee has a covered illness for purposes of Part E if it has already determined that the employee is entitled to compensation under Part B for the same illness. *Id.* § 7385s-4(a). Otherwise, the employee must establish the following:

(A) it is as least as likely as not that exposure to a toxic substance at a Department of Energy Facility was a significant factor in aggravating, contributing to, or causing the illness; and

(B) it was at least as likely as not that the exposure to such toxic substance was related to employment at a Department of Energy facility.

*Id.* § 7385s-4(c)(1)(A)-(B).

B. **Factual Background**

Allen worked at the Paducah Gaseous Diffusion Plant ("PGDP") from July 10, 1953, to May 21, 1992. (Administrative R. 741, DN 19-1 [hereinafter AR]). Allen alleges that she was exposed to hazardous substances during her time at the PGDP, which caused various illnesses. (Compl. ¶ 10, DN 1).

Allen first sought compensation under EEOICPA Parts B and E in March 2005, alleging that she had developed chronic bronchitis and rheumatoid arthritis as a result of her employment at the PGDP. (AR 1077-84). In July 2005, the district office of DOL's Office of Workers' Compensation Programs ("OWCP") recommended that Allen's Part B claim be denied because neither of her claimed illnesses were covered by 42 U.S.C. § 7384l(15). (AR 1066-67). In November 2005, the Final Adjudication Branch ("FAB") within OWCP issued a final decision consistent with the district office's recommendation.[1] (AR 1053-54). Subsequently, in November 2006, the district office recommended that Allen's Part E claim also be denied because she had failed to submit medical evidence establishing that she was diagnosed with either rheumatoid arthritis or chronic bronchitis. (AR 1043-44). In January 2007, FAB issued a final decision consistent with the district office's recommendation. (AR 1035-36).

Allen filed a new claim under Part E in March 2009 for hypothyroidism, sinusitis, chronic obstructive pulmonary disease ("COPD") and osteoporosis. (AR 983). The next month,

---

[1] Allen has not sought review of this decision. (*See* Compl. ¶ 1).

3

she added a Part E claim for "Parenchymal Mass (Left Lower Lobe)." (AR 805). Additionally, and also in April 2009, Allen requested that her Part E claim for chronic bronchitis and rheumatoid arthritis, originally denied in January 2007, be reopened. (AR 802). That request was granted by order of a District Director of the Division of Energy Employees Occupational Illness Compensation and, as a result, FAB's January 2007 decision was vacated. (AR 744-45). The order stated that new medical evidence submitted by Allen established that she was diagnosed with rheumatoid arthritis and chronic bronchitis and that the district office would consider the medical evidence, "complete any necessary development[,]" and issue a new recommended decision. (AR 745). At this point, Allen had three Part E claims pending, which, collectively, were for chronic bronchitis, rheumatoid arthritis, hypothyroidism, sinusitis, COPD, osteoporosis, and parenchymal mass.

As part of the district office's development of Allen's pending Part E claims, it sent her file to a medical consultant. The consultant was asked to opine whether it was at least as like as not that exposure to toxic substances at the PGDP was a significant factor in causing, aggravating, or contributing to Allen's claims. (AR 587). Ultimately, after considering the toxic substances Allen could have been exposed to while at the PGDP in light of the record medical evidence, he concluded that there was insufficient evidence to support a conclusion that any of her claimed illnesses resulted from exposure to toxic substances at the PGDP. (AR 584-87). In so concluding, the consultant stated:

> The medical records do not demonstrate that Ms. Allen has COPD or chronic bronchitis. Her pulmonary function tests are normal. He[r] sinus condition is due to allergy (allergic rhinitis/sinusitis) and not exposure to toxic substances at a DOE facility. The cause of her rheumatoid arthritis and hypothyroidism are not known and are not likely caused by toxic substances. The cause of rheumatoid arthritis, an autoimmune disorder, is not known. The cause of hypothyroidism is frequently not known. Osteoporosis was caused by Ms. Allen's medical conditions, or risk factors, that are not related to exposure substances. The

4

parenchymal mass was a lung abscess that resolved. The abscess was due to an
infection and not exposure to toxic substances at a DOE facility.

(AR 587).

In August 2009, the district office recommended that Allen's Part E claims be denied because the evidence of record was insufficient to establish that it was as least as likely as not that exposure to toxic substances at the PGDP was a significant factor in causing, contributing to, or aggravating Allen's chronic bronchitis, rheumatoid arthritis, hypothyroidism, sinusitis, COPD, osteoporosis, and parenchymal mass. (AR 502-05). However, after the district office rendered its recommended decision, Allen filed an additional Part E claim for brain aneurysm. (AR 498). In April 2010, FAB issued a final decision consistent with the district office's recommendation that Allen's Part E claims for chronic bronchitis, rheumatoid arthritis, hypothyroidism, sinusitis, COPD, osteoporosis, and parenchymal mass be denied.[2] (AR 415-18). Allen requested reconsideration of FAB's decision, which request was denied. (AR 394-96). Subsequently, a Unit Chief for Policies, Regulations, and Procedures within OWCP's Division of Energy Employees Occupational Illness Compensation vacated FAB's final decision and returned Allen's file to the district office with instructions to issue a new recommended decision after considering additional evidence submitted by Allen. (AR 367-70).

While Allen's Part E claims for chronic bronchitis, rheumatoid arthritis, hypothyroidism, sinusitis, COPD, osteoporosis, parenchymal mass, and brain aneurysm were pending at the district office, Allen filed new claims under Parts B and E for CBD. (AR 302). In the course of processing Allen's claims, the district office sent two letters to Allen describing the pre- and post-1993 statutory criteria for establishing a diagnosis of CBD and informing her that additional

---

[2] Of course, Allen's intermittent Part E claim for brain aneurysm was not addressed in this decision. (*See* AR 415-18).

5

evidence was needed. (AR 246-49, 294-98). The district office summarized the medical evidence Allen had submitted as follows:

- A re-hire chest x-ray examination dated January 14, 1976 that showed a few parenchymal and hilar calcification without evidence of active lung disease.
- A chest x-ray examination dated November 8, 1976 that showed a few parenchymal and hilar calcification without evidence of active lung disease.
- A chest x-ray ray report dated October 3, 1984 that reveals "very slight fibrosis in the right lunch base . . . which is old and does not appear significant." The final impression indicated a "normal chest."
- A CT-Scan of the chest for new ill-defined infiltrate in the left lower chest dated May 7, 1993. The report references an examination that revealed a nectrotic irregular peripheral infiltrate in the anterior segment of the left lower lobe measuring 4 ½ x 2 ½ cm adjacent to the chest wall. The final impression of the CT scan indicates ill-defined 4 x 3cm. parenchymal mass in the anterior segment of the left lower lobe – consistent with carcinoma versus necrotic pulmonary infarction versus organizing pneumonia or abscess. Ms. Allen was directed to consult a pulmonologist if her [hemoptysis] did not improve.

(AR 246-47). In summary, it explained, "[t]o date, there is medical evidence that establishes Ms. Allen meet[s] one (1) of the three (3) required criteria of Pre-1993 CBD. The evidence of record indicates that [Ms. Allen] has a *clinical course report consistent with chronic respiratory disease disorder* 'only.'" (AR 249).

On December 30, 2011, the district office recommended that Allen's Part B claim for CBD, as well as her Part E claims for chronic bronchitis, rheumatoid arthritis, hypothyroidism, sinusitis, COPD, osteoporosis, parenchymal mass, brain aneurysm, and CBD be denied. (AR 194-98). Allen objected to the recommended decision and requested a hearing, which hearing was held in March 2012. (AR 186, 121-174).

Following the hearing, on July 30, 2012, FAB issued a final decision consistent with the district office's recommendation. (AR 87-93). As to Allen's Part B claim for CBD, FAB noted that Allen had submitted the following medical evidence:

6

- A May 7, 1993 CT scan indicating an impression of an ill defined parenchymal mass in the anterior segment of the left low lobe, consistent with carcinoma versus necrotic pulmonary infarction versus [organizing] pneumonia or abscess.
- A June 18, 2007 x-ray report, signed by Danny Hatfields, [M.D.], documenting an impression of mild COPD and mild left basila [atelectasis].
- A March 25, 1997 report, signed by Jesse Wallace, M.D. indicating a final impression of chronic sinusitis, chronic bronchitis, rheumatoid arthritis, osteoporosis and chronic steroid therapy.
- A hospital discharge summary report, signed by Theodore E. Davies, M.D., documenting a hospital stay from July 25, 2001 through August 9, 2001, and documenting diagnoses of subarachnoid hemorrhage secondary to ruptured anterior communication artery aneurysm.
- A July 16, 2008 x-ray report, signed William Adams, M.D, documenting an impression of overexpansion compatible with COPD and probable basilar fibrotic change.
- An August 1, 2008 beryllium lymphocyte proliferation test (LPT), signed by Lisa Maier, M.D., documenting a normal lymphocyte transformation to beryllium sulfate.
- A September 16, 2008 screening examination from the Former Workers Health Protection Program, signed by Charles R. Fikar, M.D., referencing a chest x-ray showing no acute lung disease; a B-reading interpretation showing no evidence of dust related abnormality; a normal spirometry breathing test and normal urinalysis test.
- A March 25, 2009 radiology report, signed by Joseph O'Bryan, M.D., indicating an impression of mild left perhiliar interstitial changes - interstitial fibrosis favored.

(AR 87-88). After reviewing this evidence, FAB concluded that there was insufficient evidence to establish that Allen was diagnosed with CBD as defined by Part B of the EEOICPA and denied her claim. (AR 92-93). FAB also denied Allen's Part E claims, determining that there was insufficient evidence in the record to establish that her exposure to a toxic substance at the PGDP was at least as likely as not a significant factor in aggravating, contributing to or causing her claimed illnesses. (AR 93).

Allen asked FAB to reconsider its July 2012 decision, arguing that the district office and FAB had ignored evidence that established three of the five statutory criteria for establishing a pre-January 1, 1993 diagnosis of CBD and prior FAB decisions that had granted EEOICPA

7

benefits for CBD. (AR 81-82). On November 5, 2012, FAB denied Allen's request because she had failed to present any new evidence or argument in support of her claims under Parts B or E. (AR 52-56). FAB rejected Allen's argument that it had ignored evidence establishing three of the five pre-1993 CBD criteria, and reaffirmed its earlier conclusion that she met only Criterion IV (a clinical course consistent with a chronic respiratory disorder). (AR 54-55). It explained that Allen's x-ray reports from Union Carbide Corporation from 1976 through 1989 were received and reviewed, and that the last of those x-rays was recorded as normal in June 1989. (AR 52). It noted as follows with regard to the balance of the medical evidence Allen had submitted:

> Your x-ray results are conflicting and the B reader did not find any evidence of dust related abnormalities [or] acute lung disease in September of 2008. While subsequent x-rays show abnormal findings, there is no evidence to link these findings to CBD. Even if the x-rays were considered to meet the second of five criteria for a pre[-]1993 diagnosis of CBD, there is insufficient evidence to show restrictive or obstructive lung physiology testing or diffuse lung capacity defect. The pulmonary function test results in your case show that you have normal pulmonary function. There is no evidence of diffuse lung capacity defect, which is defined as the ability of gas to cross the alveolar-capillary membrane in the lung. There is no medical evidence to show that blood gasses or pulmonary function is impacted to meet this requirement. . .Your representative argues that [an] x-ray taken on June 18, 2007, with a finding of mild left basila atolectasis meets this criteria. But this finding has not been repeated on any subsequent x-rays and is not indicative of a diffusion capacity defect.

(AR 54). Additionally, FAB recognized that Allen's representative cited "prior decisions issued by the FAB granting benefits for CBD" in support of Allen's claim but explained that those "cases include[d] abnormal pulmonary function test results, which" were absent in Allen's case. (AR 54).

In December 2012, Allen requested that her Part B and E claims be reopened. (AR 32-34). But, on June 4, 2013, the District Director denied the request because the arguments made and materials cited by Allen in support of her request to reopen did "not constitute the evidence

necessary to support a reopening [her] claim as stipulated in the regulations." (AR 25-26). Allen made a second reopening request in April 2014, arguing that her claim should be reopened "based on exposure to a toxic substance(s) beryllium oxide, beryllium sulfate, and welding fumes listed in the Paducah Gaseous Diffusion Plant (PGDP) Site Exposure Matrices (SEM) . . . ." (AR 13-14). The District Director denied Allen's second request on June 24, 2014, because "[t]here was no new medical or employment evidence submitted with the request to reopen . . . ." (AR 3-5). The District Director explained that Allen's claim was denied for lack of medical evidence necessary to establish a diagnosis of CBD, not because Allen had no exposure to beryllium at the PGDP; in fact, based on her employment at PGDP, the potential for beryllium exposure was presumed. (AR 4).

This lawsuit followed on August 20, 2014. Allen challenges DOL's July 30, 2012, decision, which became final on November 5, 2012, denying her claim under Part B for CBD and her claim under Part E for chronic bronchitis, rheumatoid arthritis, hypothyroidism, sinusitis, COPD, osteoporosis, parenchymal mass, brain aneurysm, and CBD. Allen also challenges DOL's June 24, 2014, denial of her request to reopen her Part B and E claims. (Compl. ¶ 1).

## II. JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1331 because a federal question under the Administrative Procedures Act ("APA"), 5 U.S.C. §§ 701-706, is presented.

## III. DISCUSSION

### A. Part B Claim

#### 1. *Standard of Review*

Because the EEOICPA is silent on the procedures used in adjudicating claims for compensation, this Court and others have employed the APA's "arbitrary or capricious" standard

9

when reviewing DOL's final decisions denying claims for compensation under Part B. *Freeman v. Dep't of Labor*, No. 5:14-CV-114-GNS-LLK, 2015 WL 5020697, at *2 (W.D. Ky. Aug. 24, 2015), *aff'd*, 653 F. App'x 405 (6th Cir. 2016); *Yatsko v. U.S. Dep't of Labor*, 439 F. App'x 122, 124 (3d Cir. 2011); *Hayward v. U.S. Dep't of Labor*, 536 F.3d 376, 379-80 (5th Cir. 2008). In undertaking such a review, the Court "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Ky. Waterways All. v. Johnson*, 540 F.3d 466, 473 (6th Cir. 2008) (internal quotation marks omitted) (quoting *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 378 (1989)).

Arbitrary-and-capricious review is deferential, however. *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007). Those contesting an agency's decision must "show that the action had no rational basis or that it involved a clear and prejudicial violation of applicable statutes or regulations." *McDonald Welding v. Webb*, 829 F.2d 593, 595 (6th Cir. 1987) (citations omitted). "If there is any evidence to support the agency's decision, the decision is not arbitrary or capricious." *Kroger Co. v Reg'l Airport Auth. of Louisville & Jefferson Cty.*, 286 F.3d 382, 389 (6th Cir. 2002) (citation omitted). Moreover, "[w]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir. 1995) (internal quotation marks omitted) (citation omitted).

### 2. *DOL's Decision was neither Arbitrary nor Capricious*

Review of FAB's final decision denying Allen's claim under Part B shows that it considered the factors relevant to determining whether Allen established a claim for CBD under Part B and evidences no clear error in violation of the EEOICPA or its implementing regulations. It is undisputed that the results of a beryllium lymphocyte proliferation test submitted by Allen

were normal. Therefore, Section 7384l(13)(A) is inapplicable and FAB rightly applied Section 7384l(13)(B). As to Section 7384l(13)(B)(i), FAB determined that Allen worked at the PGDP, a facility where the potential for beryllium exposure existed, and presumed beryllium exposure. (AR 4). However, based on a totality of the medical evidence, FAB found that the medical evidence submitted by Allen established only one of the statutory criteria listed in Section 7384l(13)(B)(ii)(I)-(V): a clinical course consistent with chronic respiratory disorder, or Criterion IV.

Allen argues that the medical evidence—some of which she alleges DOL failed to consider—shows that Criterion I and II are also met and that FAB acted arbitrarily and capriciously in concluding otherwise. As to Criterion I, FAB determined that Allen's chest x-rays did not show abnormalities consistent with CBD. In her reply, Allen contends that DOL failed to review or acknowledge the following evidence when evaluating her Part B claim:

- A Pre 1993 X-Ray Report from November 8, 1976 from Union Carbide Corporation medical records documenting that Allen was diagnosed with "parenchymal and hilar calcifications" in 1976. This X-Ray Report is clear evidence that Allen's medical records include Criteria I diagnosis. (R. Allen 0309, X-Ray Report from Union Carbide Corporation medical records). In the History section of DOL's responsive brief, DOL does not make any reference to this medical record as Allen's record file is absent of any review of this medical evidence that establishes her diagnosis in 1976 of Criteria I diagnosis.
- A Pre 1993 X-Ray Report from October 3, 1984 diagnosing Allen with "slight fibrosis in the right lung base. (R. Allen 0309, X-Ray Report from Union Carbide Corporation medical records). Once again, in the History section of DOL's responsive brief and in the decisions made by the government, DOL does not make any reference to this medical record as Allen's record file is absent of any review of this medical evidence that establishes her diagnosis in 1984 of Criteria I diagnosis.
- On October 7, 1993, as confirmed in an enhanced C- T Scan, Allen was diagnosed with "ILL-DEFINED 4 X 3 CM. PARENCHYMAL MASS IN THE ANTERIOR SEGMENT OF THE LEFT LOWER LOBE — CONSISTENT WITH CARCINOMA VERSUS NECROTIC PULMONARY INFRACTION VERSUS INFRACTION VERSUS ORGANIZING PNEUMONIA OR ABSCESS." Once again, in the

11

> History section of DOL's responsive brief and in the decisions made by
> the government, DOL does not make any reference to this medical record
> as Allen's record file is absent of any review of this medical evidence that
> establishes her diagnosis in 1993 of Criteria I diagnosis.

(Pl.'s Reply 12-14, DN 37). DOL, however, reviewed all of this evidence and concluded on multiple occasions that it was insufficient to establish a CBD diagnosis under Section 7384l(13)(b). For starters, while Allen represents that the CT scan revealing ill-defined parenchymal mass occurred on October 7, 1993, the record itself is dated May 7, 1993. (AR 804). In the letters the district office sent to Allen after she filed her Part B claim for CBD, the district office listed all of the medical records Allen cites in her reply, explained that they were sufficient to establish only Criterion IV, and informed Allen that she needed to submit additional medical evidence. (AR 294-98). The district office cited the May 1993 CT scan in its recommended decision, (AR 194), and FAB cited it in its final decision. (AR 87-88). Additionally, in its denial of Allen's request for reconsideration, FAB explained that Allen's Union Carbide x-ray reports from 1976 through 1989 were reviewed and that the last of such x-rays was normal.

Furthermore, FAB found that "even if the x-rays were considered to meet [Criterion I]," the record evidence was insufficient to show that Criterion II was met. (AR 54). FAB explained that Allen's pulmonary function tests results showed that she had normal pulmonary function, and that there was no evidence of a diffuse lung capacity defect. Allen points to her June 18, 2007, x-ray report listing a finding of atelectasis, but FAB considered this report and rejected it because "that finding was not repeated on any subsequent x-rays and was not indicative of a diffusion capacity defect." (AR 54).

Scott is essentially asking the Court to reinterpret the medical evidence that FAB previously considered and render its own judgment based on that evidence. The Court cannot do

so. *Freeman v. Dep't of Labor*, 653 F. App'x 405, 410 (6th Cir. 2016) (citations omitted); *see also McAlister v. Liberty Life Assurance Co. of Boston*, 647 F. App'x 539, 548-49 (6th Cir. 2016) ("[W]e are not medical specialists and that judgment is not ours to make." (internal quotation marks and citation omitted)); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (noting that under arbitrary and capricious review, "a court is not to substitute its judgment for that of the agency.").

Allen also argues that DOL cannot use contract medical consultants when the medical records of the employee establish three of the five criteria for a pre-January 1, 1993, diagnosis of CBD. Regardless of whether that is true or not, DOL did not ask a contract medical consultant to review Allen's medical records relating to her CBD claim and opine whether those records established the applicable statutory criteria. Instead, a medical consultant was asked—before Allen even filed her Part B CBD claim—to render an opinion as to whether it was at least as like as not that exposure to toxic substances at the PGDP was a significant factor in causing, aggravating, or contributing to Allen's Part E claims. Therefore, this argument is without merit.

Overall, DOL's decision denying Allen's Part B claim is supported by medical evidence (or the lack thereof) and thus is neither arbitrary nor capricious. *Kroger Co.*, 286 F.3d at 389 (6th Cir. 2002) (citation omitted). *See also Freeman*, 653 F. App'x at 411; *Watson v. Solis*, 693 F.3d 620, 626 (6th Cir. 2012) (where the claimant fails to provide evidence that is required under the Act, the DOL does not act arbitrarily or capriciously). There was no "clear error judgment." *Ky. Waterways All.*, 540 F.3d at 473 (quoting *Marsh*, 490 U.S. at 378). Indeed, it appears the agency gave Allen every opportunity to succeed on her claim—it twice reopened final decisions to consider additional evidence. Allen was simply unable to provide evidence showing that three of the five criteria listed in listed in 42 U.S.C. § 7384l(13)(B)(ii)(I)-(V) were met.

B.   **Part E Claims**

The EEOICPA provides for judicial review of DOL's final decisions denying claims for benefits under Part E as follows:

> A person adversely affected by a final decision of the Secretary under [Part E] may review that order in the United States district court. . .by filing in such court ***within 60 days after the date on which that final decision was issued*** a written petition praying that such decision be modified or set aside. . . . Upon such filing, the court shall have jurisdiction over the proceeding and shall have the power to affirm, modify, or set aside, in whole or in part, such decision . . . .

42 U.S.C. § 7385s-6(a) (emphasis added).

The Court has previously ruled that compliance with the 60-day filing deadline under Section 7385s-6(a) is a jurisdictional prerequisite for judicial review of final decisions denying claims under Part E. *Lanier v. Dept. of Labor*, No. 5:14-CV-168-GNS, 2015 WL 1638495, at *2-3 (W.D. Ky. June 8, 2015); *Featherston v. Dep't of Labor*, No. 5:14-CV-00132-GNS-LLK, 2016 WL 4746211, at *4 (W.D. Ky. Sept. 12, 2016). Generally, a decision is final on the date it is issued by FAB. 20 C.F.R. § 30.316(d). However, a claimant dissatisfied with the disposition of her claim may ask FAB to reconsider its decision. *Id.* § 30.319(a). If her request for reconsideration is denied, the FAB decision that formed the basis of the request will be considered "final" on the date the request is denied. *Id.* § 30.319(c)(2).

FAB denied Allen's Part E claim on July 30, 2012. That decision became final on November 5, 2012, when it denied Allen's request for reconsideration. Because Allen did not seek judicial review until August 20, 2014, the Court lacks jurisdiction to review the portion of FAB's decision denying her Part E claim.

C.   **Request to Reopen**

Requests to reopen EEOICPA claims are reviewable under certain circumstances. Recently, in *Berry v. Department of Labor*, 832 F.3d 627 (6th Cir. 2016), the Sixth Circuit held

14

that requests to reopen EEOICPA Part B claims based on new evidence, as opposed to those based on material error in the original decision, are subject to judicial review under the APA. *Id.* at 636. Here, Allen asks the Court to review DOL's June 2014 denial of her April 2014 request to reopen her Part B and E claims.[3] Judicial review of Allen's request to reopen her Part B claim clearly depends on whether *Berry* is satisfied. And, assuming requests to reopen Part E claims are subject to judicial review, such requests would also be subject to the requirements of *Berry*. *See Featherston*, 2016 WL 4746211, at *5.

Allen requested that her Part B and E claims be reopened "based on exposure to the following toxic substances: beryllium oxide, beryllium sulfate, and welding fumes, as identified in the PGDP SEM that links the claimant's covered illness of chronic beryllium disease . . . ." (AR 14). However, based on her employment at the PGDP, DOL presumed that Allen was potentially exposed to beryllium for purposes of her Part B and E claims. (AR 4). As a result, Allen's exposure to beryllium was not a factor in the denial of Allen's claims and is not new evidence.[4] *See Featherston*, 2016 WL 4746211, at *5. Instead, Allen's Part B and E claims

---

[3] Allen has not challenged DOL's June 2013 denial of her December 2012 request to reopen. (*See* Compl. ¶ 1).
[4] To the extent Allen argues that the SEM somehow represents new evidence as to her Part E claim for CBD, she is incorrect. In the absence of a final decision under Part B approving CBD, a positive beryllium lymphocyte proliferation test and a rationalized medical report including an explicit diagnosis of CBD from a qualified physician is required to establish CBD under Part E. *See, e.g.*, Chapter 2-1000.9b, Federal (EEOICPA) Procedural Manual (Oct. 2009), https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_transmittals/Transmittal_10-05.pdf;
Chapter 2-1000.9b, Federal (EEOICPA) Procedural Manual (July 2011), https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_transmittals/Transmittal_11-04.pdf;
Chapter 2-1000.9b, Federal (EEOICPA) Procedural Manual (April 2013), https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_transmittals/Transmittal_13-04.pdf;
Chapter 2-1000.9b, Federal (EEOICPA) Procedural Manual (September 2015),

were denied because she failed to submit sufficient medical evidence. Allen submitted no new medical or employment evidence in support of her request to reopen those claims. Therefore, the Court concludes that Allen's request was based on a purported material error in DOL's decision. Under *Berry*, such reopening requests are not reviewable.

## IV.    CONCLUSION

First, as to her Part B claim, Allen failed to establish the statutory criteria for a diagnosis of CBD. FAB's decision so concluding was logical and based on record evidence; it was neither arbitrary nor capricious. Second, the Court lacks jurisdiction to review the denial of Allen's Part E claims. Last, the denial of Allen's request to reopen her claims is unreviewable under *Berry v. Department of Labor*.

**Greg N. Stivers, Judge**
**United States District Court**
August 30, 2017

cc:    counsel of record

---

https://www.dol.gov/owcp/energy/regs/compliance/PolicyandProcedures/proceduremanualhtml/unifiedpm/Unifiedpm_transmittals/Transmittal_15-08.pdf.